We now proceed to the next case, American Steel Foundry v. Workers' Compensation Commission, 5100327. Council, please. Good morning. I will try to speak up, but like some others on the bench, it seems like I'm under the weather, unfortunately, so I will ask for your forbearance. Are you aware of one of us being under the weather? Me. Okay. I apologize. I'm David Davis, and I represent American Steel Foundries, the respondent employer in this matter. This is a wage differential case, as you know. A claimant developed a case of late onset of hives for a brief period of time here, and it was determined that something in his work environment was apparently triggering the hives significantly. Nobody was ever able to figure out what it was, and as the treaty that Howard just testified, there are thousands of triggers. We don't know what triggered it. And so Howard just said, I think based on the fact that you're coming down with these hives and having severe anaphylactic reactions requiring trips to the emergency room, don't go back to work at American Steel. And so that's the only restriction in this case, and that's the significant fact, and it's undisputed. The claimant went to trial on a wage differential theory, and the arbitrator gave it to him, stating that the evidence was clear that he was no longer able to work his usual job with American Steel. However, I don't believe that's the correct legal standard. The commission, in a two-to-one decision, affirmed. The circuit court confirmed, and here we are. As you know, wage differential rewards require proof of two things. One, a partial incapacity to pursue your usual and customary employment. In a situation like this, the claimant was kind of the jack of all trades at American Steel. He had done a lot of different things. He was a laborer. He was a crane operator, a mold finisher, and the like. That was a special question. What are you arguing is the standard of review on the wage differential issue? Well, I think it could be either. I don't think the material facts are in dispute here, so I think it's a matter of law, or the fallback would be manifest way to the evidence. Wouldn't it be more likely to be manifest way? Are all of the salient facts completely agreed upon? Well, I don't think the material ones are in dispute. But, again, let's assume that it's manifest way. Well, it makes a difference, obviously, doesn't it? It does. But I think the key facts are that he was told not to go back to work at American Steel. Something at American Steel, whether it was the soap in the washroom, who knows what, was supposedly triggering his hives. And he didn't go back to work, and he's claiming that now he's entitled to a wage differential, and the fact that he can no longer work at American Steel makes him eligible for that. I don't think those facts are in dispute. And my point is that the law is crystal clear that you have to prove that you're unable to do your regular job. It's not just you can't work as a carpenter, for instance, for this particular employer, or you can't be a coal miner in this particular mine. You've got to show that you're not a coal miner, period. You're out of the – you're no longer able to do that particular job. Wasn't there some evidence, though, that he was – that Dr. Schell had recommended he avoid contacts with all sorts of things that you're normally exposed to, odors, dust, gases, fumes, smoke, chemicals? Isn't that in the record? That is in the record. However, number one, that report is hearsay. As my brief points out, the National Wrecking Case indicates that when reports are prepared for Social Security purposes, as that one was, they run afoul of the Pencil Twofold Prohibition on the admission of trustworthy documents. Number two, the claimant's own vocational rehabilitation experts said, even given those restrictions by Scheller – and this is the crucial part of the equation, which the Commission didn't discuss and the Arbitrary didn't discuss. That is, their own Arbitrary, their own vocational experts said, notwithstanding those restrictions, he can still do his job, just not at American scale. You know, I mean, there are people that have respiratory issues. Take the coal miner in Dawson. You know, there's a guy that's got pneumoconiosis, but they say that doesn't knock you out of the box from being a coal miner. You know, you wear proper clothing or masks or whatever. You can still be a coal miner. Therefore, you have not proven that you are entitled to a wage differential, because you can still get up partially incapacitated from pursuing your usual employment. What about this argument that couldn't the Commission reasonably conclude the claimant was likely to suffer from the same allergic reactions by performing the same work in similar environments? Absolutely not. Absolutely not. And that assumes that you know what's triggering this guy's attacks. And there's zero evidences of what's triggering this guy's attacks. Zero. You know, the circuit court said, well, you know, this is a chemical insensitivity case. Well, really? Nobody opined that this gentleman's hives were being caused by any particular chemical or substance. The evidence is, we don't know. But whatever it is, there's something associated with him going to work at that place that's apparently causing it. I guess it could be somebody's perfume that he's working with. It could be, like Tillinghast said, a thousand triggers. Your opponent would agree there's no evidence in the record whatsoever as to what caused the problem. Absolutely. Okay, well, we'll ask him. I would, and please do, because there is none. The presence of hives or this condition, which I guess waxes and wanes, does it? It resolved. Tillinghast said that by March of 2007, that condition had resolved. And so what you're saying is even if the person is experiencing the condition, they can still do their job? Well, certainly. Okay, so I mean that's your position. Certainly. Yeah, okay. I mean, no doctor here has testified. And I think this is what's critical. If you're going to claim that I am no longer able to be a crane operator, a mold finisher, a laborer, or any one of the number of things that he was doing, if that's your position, as it is here, then you need some kind of evidence saying, okay, if you were to do that particular job in company A, B, C, D, E, and F, you're going to have the same problems. And they can't say that in this case because nobody knows what triggers his problems. Nobody. And that's the key distinction here. You look in Radizinski, and in that case, you know, there were multiple doctors testifying. This guy's dust, molds, and other things are causing his chronic sinusitis and all these things, and those conditions are going to be present no matter where he works as a carpenter. He is therefore not capable of returning to work as a carpenter. Fair enough. In this case, there is no evidence that this guy can't work as a crane operator for some other employer, that he can't work as a laborer for some other employer. There's no medical testimony whatsoever. The only evidence is, don't work for American Steel. And so when I, I'm sorry, go ahead. Okay, so when we have a wage differential, we usually have what the claimant is earning now, and then we have versus what he could earn. So we have a both person saying, starting with the assumption, he can no longer work in that higher paying industry, right? No, she never made that assumption. She just went looking for the jobs that were currently open that this guy was qualified to do. So that would be anything from minimum wage on up. She said there were no, she said, yes, I looked for jobs comparable to what he had been doing at American Steel, but they just weren't any openings right now. So I did not include those. I only put in my labor market survey those jobs where there are open positions. But did she say those jobs weren't available to him because of his restrictions? No. She said that notwithstanding Dr. Shower's restrictions, he can still do those jobs. And that's the key piece of evidence here. You have no medical evidence that says this guy can't work elsewhere. In fact, the evidence is that he can. In other words, Dr. Tillinghast did not say, this guy is totally disabled. His condition is such that no matter where he works, he's going to have a problem. He's going to develop hives. No evidence of that. And there's no vocational evidence that says, okay, given the restrictions, and again, if Shower's report is hearsay, it should come out and we're asking you to strike it. But even if she's capable of testifying about it, she said, notwithstanding those restrictions, yeah, he can do those jobs. They just don't happen to be any available when I did my Internet search, but he's not precluded from doing those. There is no evidence in this case that he can't work as a crane operator, laborer, mold finisher, sand finisher for somebody else. None. Is there any evidence that he can't work for his past employer? Certainly. Dr. Tillinghast said, don't go back to work at American Steel. And the arbitrator's finding, in which case... And that's why. Because he'll develop hives. Because something at American Steel apparently is triggering hives. And what happens if you have hives? Can't you work? Well, you know, yes, you can. But if you get breathing, if you get an anaphylactic reaction secondary to your hives, you don't always. So it's a secondary, actually, it's not hives. It's the potential secondary, debilitating, life-threatening, perhaps, reaction. Since this guy left American Steel, he said, I haven't had one instance of hives. Haven't had to go to the emergency room. And when he follows up with Shallot, the family doctor, it's for things unrelated to this particular hives issue. Well, it's actually the secondary effect. I mean, because just because you have hives doesn't mean you can't do your job. Correct. I mean, it's the potential for the secondary. That's right. And again, Dr. Tillinghast said, based on that potential, I guess I don't want you going back to work at American Steel. Fine. Go to work someplace else. I mean, this guy, you know, you can say in Dawson, this guy was a coal miner. And, you know, he, mine closes, he had recall rights someplace else. So what you're really saying is the commission is getting confused with a guarantee of income as opposed to saying that your income is diminished, your economic well-being is diminished because of a compensable condition, and that the economics of the labor market are not a compensable condition. Yeah. On the impairment of earnings issue, that's right. You know, because he is capable of doing those jobs for somebody else, and had he gone and tried to work someplace else and, you know, had the same problem, different facts. That's not the situation here. In fact, he's been in, you know, again, since he left American Steel, he's been in all kinds of environments, and he hasn't had any trouble with the hives, the anaphylactic, going to emergency rooms at all. Well, wasn't there some evidence that once this was triggered and progressed to where he would go to Home Depot and something at Home Depot? After he left American Steel, he would claim that he would get lightheadedness. None of those things ever prompted him to go to an emergency room or develop into an anaphylactic reaction. Hives will do that. There was at least testimony, though, that he could have relied on. There's no testimony, though, that those symptoms preclude him from being a crane operator, a laborer, a mold finisher, or anything else. You know, there are people that have sensitivities in the workforce, you know, that work all the time. You know, the ADA helps protect those people now, of course. But, you know, again, the standard here was, you know, are you partially precluded from doing that job? The answer is no. There's no testimony that he can't work elsewhere. And as long as he can work elsewhere, the only evidence on the impairment of earnings issue was he could be making the same money and be making more. There was no impairment of earnings in this case. Now, if you're going to sit there and say, well, gee, you know, you can only get a minimum wage job or any other job that happened to be open, that's not a suitable point. Thank you. Doctor, please. May it please the court. Mary Massa for the employee appellee in this case, Mr. Elliot Blalock. A couple of things. The first issue, I think, boils, the main issue, I think, boils down to whether or not there was an abuse of discretion in letting in that Social Security form that was part of Plaintiffs' Exhibit 5, I believe. And the standard on evidence, I think, is abuse of discretion. So in ruling on whether or not there was an abuse of discretion, the arbitrator looked at the Social Security report and said that it was more in, it wasn't requested by the litigant and it wasn't as part of the litigation process. So, therefore, under the Fensel-Tufo case, the arbitrator ruled that it was admissible. And I pointed out in my brief that there was a separate way of finding this report admissible, and that is under Wilson v. Clark. Ms. Slace, who was the vocational rehab specialist for the petitioner in this case, testified that she had requested from all of the petitioners treating physicians their medical records for her to review, specifically with regard to the restrictions that they had for a petitioner in his ability to be employed. Because that was part of her job as a vocational rehabilitative specialist. She needed to find out what employment was appropriate, what was suitable for him, based on his restrictions. Well, this Social Security report that was in Dr. Schallert's records, she got that directly from Dr. Schallert. She requested it from Dr. Schallert. It was not requested at the, it wasn't requested by the petitioner. She reviewed that report, which contained several restrictions in addition to not working at American Steel, which I believe was the only restriction that Dr. Tillingham, the allergy specialist, had opined. Dr. Schallert put in there that the petitioner had restrictions on exposure to heat, cold and humidity, fumes or odors, dust, cigarette smoke, soldering flues, solvents, cleaners, and isocyanate. These are several triggering substances which Dr. Schallert, who treated the petitioner after Dr. Tillingham had released him in February of that year, Dr. Schallert had the benefit of having regular appointments with the petitioner even after he was disabled out of working at American Steel. Let's break down your opposing counsel's argument. First of all, is there any evidence that established precisely what substance or element caused the claimant's act? I think that, Your Honor, Dr. Tillingham did address that in his testimony. He said, though, that although he was not 100% sure which chemical at work was causing the anaphylactic reactions, because the allergic reactions that the employee was subjected to were triggered each time he returned to work and went away when employee was off work, Dr. Tillingham was 100% sure that he was having an allergic reaction to something at work and 70% sure that it was this isocyanate sensitivity. Let's assume that it was something at American Steel that triggered this reaction. Opposing counsel seems to tacitly, if not directly, acknowledge that. His point, however, is a little more subtle than that. In looking at the arbitrator's specific findings, the arbitrator concludes the petitioner is entitled to a wage differential award. There is no dispute that petitioner cannot perform his customary and usual job duties with respondent, period. So his point seems to be, okay, he can't work at American Steel. Why can't he work somewhere else? Because under Section 8D1, Your Honor, the suitability of the employment or business after the accident has to be looked at. And Dr. Tillingham also opined that the employee's system was primed. And he described that as resulting in the need for smaller exposures in order to trigger an allergic reaction and allergic reactions to a broader spectrum of triggering substances, which would not have bothered him in the past, substances that were also located outside of his workplace at American Steel. And I believe he also testified that clinically he has seen that in his allergy patients, that initially they may not have quite a bad reaction to an allergen until their system gets primed. And then once that system is primed, later on in the season, they will need less and less of the substance to trigger a similar reaction. But his argument is securitous reasoning. Since nobody knows exactly what the substance is, how would anybody know exactly that in the next job he's going to be exposed to? Well, what we do know is that even after he left American Steel, he was exposed to allergens which produced an allergic anaphylactic reaction in him as well. Where was this at? Outside of work, there was testimony about when he was around gasoline, when he was around cigarette smoke, when he was around all of the substances that he had referred to when he spoke or saw. Are these substances present in every business related to his employment? No, but the vocational rehabilitative specialists did look at those substances which were triggering substances according to Dr. Shallard and which he should avoid according to the restrictions that were in that report. So if the vocational rehabilitation specialist looks at the types of jobs that he's qualified for based on his experience and education, etc., then looks at those jobs and how they may be impacted by these allergic reactions, allergens that he is restricted by in Dr. Shallard's report. Then she goes to the Internet to find if there are any jobs available that will not run afoul of the restrictions that he had. And if there were no jobs, then she didn't put them in her job survey. I understand the process. Did she delineate all the different specific jobs that he would be affected by that contained all of these substances? Or just make a general conclusion. If you've got allergies, you can't work. She did not make that conclusion, Your Honor. What she did was look at the jobs that he was qualified for and look to see if they would be affected by his restrictions on these particular allergens. For example, working as a truck driver, which he apparently did from time to time in American Steel. He's exposed to gasoline fumes there, so that type of job wouldn't be appropriate. So in terms of what the vocational rehab specialist did was if there wasn't a job out there, then it can't be suitable employment under the statute. So the jobs... Could you come up with anything that would be suitable employment? When you read this, I can't think of anything. Well... Being a cashier, women come by with perfume on. I mean, this... It seems like we've come to... I've got allergies, I'm totally disabled. Well, Ms. Slase did apparently find some jobs that he was qualified for because she said those jobs ranged in pay from maybe $9 to $11 an hour, and that's where she came from. Let's see. I don't have that in my facts, but the jobs that she looked at, the jobs that she said he was qualified for, they fell within that $9 to $11 range. And because of that, the arbitrator looked at 66 and two-thirds percent of the difference between what he was earning out at American Steel and a median of $10 an hour, and that is how the wage differential was expressed. If we looked at this record, do we have any doctor's opinion as to what it is that's causing this reaction? Well, what we know is he wasn't having any kind of allergy problems before about three weeks before the date of accident. He had one allergic reaction maybe 10 years earlier, was treated for it, and returned to work with no problems. Now all of a sudden, three weeks before the date of accident, he develops a case of hives while he's at work. And this continues for about three weeks. And then on the date of accident, he has a more severe reaction. He has breathlessness and increased blood pressure. In fact, they were concerned because of pain that he was having, I believe, up in his jaw area, that maybe he was having a heart attack. But what they were able to determine was he was having a severe anaphylactic shock. So he was treated for that with the allergy medications, returned to work, and after a few days, the allergic responses, the anaphylactic responses, returned. And that happened each time he was returned to work. And that's what prompted Dr. Tillingham, no doubt, from saying he couldn't work at American Steel. But if you look at what happened to him even after he left American Steel, he was still having these allergic reactions. And that is consistent with Dr. Tillingham's opinions with regard to a system being primed to be super allergic to allergens that may not have caused a problem in him before. If you look strictly at chain of events, you see before he was doing his job without restrictions, but after the date of accident, he was unable to maintain any work at American Steel for more than three or four days before the severe allergic reactions set back in. So the national reckoning case that was referred to in the appellant's brief, I wanted to address, and I think that case is distinguishable on the admissibility of the Social Security report. That case involved a request by the claimant himself to his doctor to send a letter to the administrative law judge on his Social Security case. We don't have any evidence, and the court pointed that out, we don't have any evidence that the report that was in Dr. Tillingham's file that was furnished to the vocational specialist, Ms. Slace, no evidence that that was requested by the petitioner. This was something that Dr. Tillingham was required to fill out by Social Security. And so reliability is not compromised by the introduction of that. But more so, the Wilson v. Clark case says that a medical expert can rely on medical records and reports of other generating doctors or medical providers if there is a foundation shown that they reasonably relied on that informing their opinions. That testimony is in the record. Ms. Slace testifies that she required all the records of the treating physicians. And she specifically requested any records that they might have with regard to his current restrictions. And that's where this came in. She relied on them informing her opinions. And so under Wilson v. Clark, it's not an abuse of discretion for the arbitrator to have admitted that vocational report. I see my time is up, and I thank you very much. The panel, please. I think you guys have answered your question. She agrees that there is no substance that was ever found to have triggered this gentleman's hives at American Steel. You know, it's Mr. Blaylock's burden of proof here. If he wants a wage differential, okay. You've got to prove that you can no longer do your job with anybody. And he didn't prove that. You get a doctor to say, okay, because now he's got allergies. Again, the hives resolved by Tillinghast, the allergist. That condition resolved. Now we're left with this breathlessness thing, which is based on a speculation theory of Dr. Tillinghast. He freely admitted it's speculation. Let's assume the guy's now got allergies like he's describing. That's not an anaphylactic reaction. Hives don't equal allergies. So you've got allergies. You're totally disabled from doing anything, anytime. What doctor said that? Nobody. The arbitrator spent considerable time talking about what he found. Well, the arbitrator recited the facts, but then concluded that he was no longer capable of working with American Steel, and that's not in dispute. To meet his burden of proof, in this case, Mr. Blaylock had to say, I can't work anywhere doing this type of job. I can't be a crane operator, a laborer, a mold finisher, anywhere. Period. I'm totally disabled, essentially. And there is no evidence of that. And, again, critically, on the vocational side, their own expert. It's in the appendix, page 843. In other words, you would agree Mr. Blaylock is not precluded from going out and finding a job as a laborer, as a crane operator, as a mold closer, or as a finisher. Correct? Within Dr. Schallert's restrictions. And she says correct. So, again, the vocational expert for claim is agreeing that even with these seemingly onerous restrictions by Dr. Schallert, he can still find a job doing what he's been doing at American Steel. But how does he prove that he is partially incapacitated from working those jobs? Well, does he have to eliminate every employer in the country for all those kinds of jobs to be disburdened proof? To be disburdened proof, he has to be able to say that if I go back to work as a crane operator, as a mold finisher, as a laborer, I won't be able to work those jobs. Anywhere. Anywhere. It's just like the coal miner in Dawson. You know, he said, look, I don't want to go work in another coal mine. That opportunity exists to me. I want an 8D1 wage differential because I can't work at the coal mine that I've spent my whole life working at. And, you know, the court says no. You're not precluded from working as a coal miner. All these cases turn on whether you're capable of doing your occupation, your normal occupation. That's the issue. Does this gentleman? The issue then is impairment? Martial incapacity. He hasn't proved an impairment or not. No, he clearly has not. Yeah. I mean, he hasn't proved either. Wrong. That's absolutely correct. So, again, if some doctor had said, look, don't go play any of these jobs at the crane, then different facts. That's not here. No medical evidence that he's precluded from doing those jobs elsewhere. None. And there's no evidence that if he were doing those jobs elsewhere that he would suffer an impairment of earnest. Thank you. The court will take the matter under advisement.